UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TINCY LEE HUNT, | NO.  C12-1401-JLR-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Plaintiff Tincy Lee Hunt appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for additional proceedings.

I.        FACTS AND PROCEDURAL HISTORY

Plaintiff is a 46-year-old woman with a high school diploma and some vocational

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this suit.  **The Clerk of Court is directed to update the docket accordingly, and the parties are ordered to update the caption on all future filings with the Court.**

REPORT AND RECOMMENDATION - 1

training.  Administrative Record ("AR") at 52, 72-73.  Her past work experience includes employment as a daycare worker and sales representative.  AR at 244.  Plaintiff was last gainfully employed in September 2007.  *Id.*

On April 30, 2009, Plaintiff filed a claim for SSI payments and an application for DIB, alleging an onset date of April 1, 2008.  AR at 206-10.  Plaintiff asserts that she is disabled due to anxiety, two bad knees, bad right ankle, carpal tunnel syndrome, high blood pressure, asthma, thyroid problems, and a mental condition.  AR at 225, 264, 272-73.

The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 118-21, 124-28.  Plaintiff requested a hearing, which took place on March 1, 2011, and was continued to May 5, 2011.  AR at 32-112.  On July 29, 2011, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on her finding that Plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 15-26.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On August 20, 2012, Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1, 6.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Hunt bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.     DECISION BELOW

On July 29, 2011, the ALJ found:

1.   The claimant meets the insured status requirements of the Social Security Act through December 12, 2012.

2.   The claimant has not engaged in substantial gainful activity since April 1, 2008, the alleged onset date.

3.   The claimant's bilateral knee arthritis, asthma, obesity, and depression are severe impairments.

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.   The claimant has the residual functional capacity to lift and carry 10 pounds frequently and 20 pounds occasionally.  She can walk and stand for a total of at least 2 hours in an 8-hour day.  She can sit for 6 hours in an 8-hour day with brief postural changes and usual, customary breaks.  She should be allowed to sit and stand at will.  All postural limitations are frequent.  She must avoid concentrated exposure to extreme heat, vibration, pulmonary irritants, and hazards.  She has sufficient concentration to maintain persistence and pace in 2-hour increments with usual and customary breaks during an 8-hour

workday.  She has sufficient persistence and pace to meet average production standards.

6.    The claimant is unable to perform any past relevant work.

7.    The claimant was born on XXXXX, 1966, and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[3]

8.    The claimant has at least a high school education and is able to communicate in English.

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.   The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2008, through July 29, 2011.

AR at 17-26.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Whether the ALJ properly rejected the opinions of Mumin Dimbil, M.D., and Ann Alvarez, M.D.;

2.    Whether the ALJ's residual functional capacity ("RFC") assessment accounted for all of Ms. Hunt's limitations;

3.    Whether the ALJ erred in discounting Ms. Hunt's credibility; and

4.    Whether the ALJ met her burden at step five of the sequential evaluation process.

Dkt. 18 at 1.

---

[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

VII.    DISCUSSION

A.    <u>The ALJ Did Not Err in Assessing the Opinions of Drs. Dimbil and Alvarez.</u>[4]

The ALJ discounted the opinions of treating physician Dr. Dimbil and consultative examiner Dr. Alvarez.  According to Plaintiff, the ALJ erred in assessing the opinions provided by these physicians, and thus improperly failed to account for all the limitations they identified when assessing Plaintiff's RFC.  The Court will address the opinions of each doctor in turn.

1.    *Dr. Dimbil*

Dr. Dimbil opined in a July 2008 form that Plaintiff is unable to stand, lift, or bend over for more with 15 minutes without pain, and that she could work no more than 11-20 hours per week.  AR at 475.  Dr. Dimbil also indicated that Plaintiff was capable of performing sedentary work.  *Id.*  Dr. Dimbil opined that Plaintiff's restrictions would limit her ability to work for 3-6 months.  AR at 476.

The ALJ provided three reasons to discount Dr. Dimbil's opinion.  First, the ALJ noted

---

[4] Plaintiff's briefing segues from a discussion of the ALJ's rejection of the opinions of Drs. Dimbil and Alvarez into an argument regarding the ALJ's duty to develop the record regarding the severity of Plaintiff's knee pain.  Dkt. 18 at 8-11.  It is unclear what error Plaintiff is alleging with this line of argument: she does not explain whether she is alleging a step-two error (though the ALJ found Plaintiff's knee arthritis was a severe impairment, in combination with her obesity), whether she is contending that the ALJ failed to account for Plaintiff's obesity in the RFC assessment, or what triggered the ALJ's duty to further develop the record.  Furthermore, Plaintiff's briefing seamlessly transitions from a discussion of Plaintiff's obesity into a discussion of the ALJ's "dismissiveness," without identifying a particular error or explaining how it was prejudicial.  Dkt. 18 at 11-12.  Plaintiff then moves on to argue that the State agency consultant's opinion is not supported by substantial evidence, citing evidence which might support another conclusion but fails to establish the lack of substantial evidence to support the consultant's opinion.  Dkt. 18 at 12.  Finally, Plaintiff alleges that the ALJ erred in speculating that Dr. Dimbil's cane prescription was a precaution rather than medically necessary, but does not explain how this finding was prejudicial.  Dkt. 18 at 13.  All of these arguments are contained within a section titled "Medical Source Opinions," and leave much to be desired in terms of specifying a particular error or errors and the alleged prejudice flowing therefrom.  This Report and Recommendation addresses the issues briefed with specificity, and deems all other issues waived.  *See, e.g.*, *Perez v. Barnhart*, 415 F.3d 457, 462 n.4 (5th Cir. 2005) (finding that a poorly organized claimant's brief waived some arguments due to inadequate briefing).

that Dr. Dimbil's opinion was not accompanied by objective findings, and that his treatment notes do not support the severe limitations indicated in the opinion.  AR at 24.  The ALJ also pointed to the vagueness in Dr. Dimbil's opinion that Plaintiff cannot stand, lift, or bend over without pain, because it is not clear how long Plaintiff could stand in total during a day, nor is it clear what it would mean to lift for more than 15 minutes.  *Id.*  Lastly, the ALJ pointed to the limited temporal scope (3-6 months) of Dr. Dimbil's opinion as a basis to discount the weight afforded to it.  *Id.*

Plaintiff challenges the validity of the first two reasons provided by the ALJ, but does not address the temporal issue.  A limited temporal scope is a valid reason to discount an opinion, in light of the Act's definition of "disability," which requires a severe impairment that prevents work that is expected to last at least twelve months.  *See* 20 C.F.R. §§ 404.1505, 1509.  Moreover, the ALJ's other two reasons are also valid.  Dr. Dimbil's opinion is not accompanied by any clinical findings, and his treatment notes from the time period including and before the date of the opinion do not contain findings supporting the severe limitations set forth in the opinion.  *See* AR at 294-306 (Dr. Dimbil's treatment notes from April to July 2008).  This is a valid reason to discount Dr. Dimbil's opinion.  *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Likewise, the ALJ properly identified a deficiency in Dr. Dimbil's opinion: though he provides a vague measurement of the maximum amount of time that Plaintiff could stand, lift, or bend at a time, he did not opine as to the total amount of standing, lifting, or bending that Plaintiff could do over the course of a workday.  Without aggregating that time, Dr. Dimbil's estimate is less relevant to the ALJ's inquiry.  Though Plaintiff suggests that the ALJ could have recontacted Dr. Dimbil to ask follow-up questions, such a process was not necessary here

because the ALJ did not find Dr. Dimbil's opinion to be ambiguous or inadequate.  *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (holding that the "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence").

Because Plaintiff has not identified an error in any of the reasons provided by the ALJ as grounds to discount Dr. Dimbil's opinion, the ALJ's assessment of Dr. Dimbil's opinion should be affirmed.

2.    *Dr. Alvarez*

Dr. Alvarez completed a physical consultative examination of Plaintiff in July 2009, and provided opinions regarding Plaintiff's limited ability to lift, carry, stand, walk, sit, push, pull, climb, stoop, kneel, and crouch.  AR at 349.  She indicated that Plaintiff had no manipulation limitations, nor visual or communicative limitations.  *Id.*

To the degree that Dr. Alvarez indicated that Plaintiff could lift/carry less than 20 pounds occasionally and less than 10 pounds frequently, and could walk/stand less than two hours per day and sit less than six hours per day — thereby being unable to complete a full eight-hour workday[5] — the ALJ rejected the opinion as inconsistent with examination findings (specifically lack of knee instability, and normal strength, sensation, reflexes, and gait) and the objective longitudinal record.  AR at 24, & n.1.  The ALJ also discounted Dr. Alvarez's opinion as inconsistent with Plaintiff's self-reported daily activities, including her ability to complete self-care tasks, babysit her two young grandchildren, cook, do laundry, wash dishes,

---

[5] The ALJ proposed at the hearing to recontact Dr. Alvarez to determine whether she intended to indicate that Plaintiff could not complete an eight-hour workday, but Plaintiff's counsel objected to that action.  *See* AR at 24 n.1.

1    vacuum, grocery shop, manage her finances, drive a car, and ride a bus.  AR at 23-24.[6]

2           According to Plaintiff, the ALJ erred in finding that Dr. Alvarez's opinion was

3    insufficiently supported, because Dr. Alvarez herself reviewed x-rays showing osteoarthritis in

4    Plaintiff's knees, and her testing revealed that her knees have limited range of motion,

5    tenderness and crepitation.  *See* AR at 349.  Plaintiff identifies only knee-related findings, but

6    does not explain how those findings necessarily support Dr. Alvarez's opinions regarding, for

7    example, limitations on lifting, carrying, or sitting.  Plaintiff also suggests that the ALJ erred in

8    failing to consider Plaintiff's obesity "when evaluating Dr. Alvarez's opinion," but this

9    purported error overlooks that Dr. Alvarez herself considered Plaintiff's obesity when

10   evaluating her functional capacity.  Dkt. 21 at 2.  Dr. Alvarez noted that Plaintiff's knee pain

11   and back pain are aggravated by her morbid obesity, but nonetheless found that, for example,

12   Plaintiff's strength was 5/5 in all extremities, which is not necessarily consistent with her

13   lift/carry restrictions.  Thus, Dr. Alvarez herself considered Plaintiff's obesity and Plaintiff has

14   not identified what further consideration should have been given by the ALJ.  Because Plaintiff

15   fails to identify a specific error that resulted from that alleged lack of additional consideration,

16   the Court need not address that issue further.  *See generally Carmickle v. Comm'r of Social*

17   *Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address issues not argued

18   with any specificity).  Thus, because Plaintiff has not shown that the ALJ erred in finding that

19   Dr. Alvarez's opinion was not adequately supported by clinical findings, the ALJ's first reason

20   for discounting Dr. Alvarez's opinion should be affirmed.

21   ─────────────────

22          [6] The ALJ provided an additional reason to discount Dr. Alvarez's opinion, in a
     different section of the decision: the ALJ earlier noted that some of Dr. Alvarez's findings

23   were based on Plaintiff's self-report rather than objective testing.  AR at 21.  Because the ALJ
     properly discounted Plaintiff's credibility, *infra* Part VII.C, the ALJ was entitled to discount

24   Dr. Alvarez's opinion to the degree that it was based on Plaintiff's non-credible self-report.
     *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

REPORT AND RECOMMENDATION - 10

1        Second, the ALJ cited Plaintiff's daily activities as inconsistent with Dr. Alvarez's

2   opinion.  Though Plaintiff contends that the ALJ ignored the context in which Plaintiff

3   completed her daily activities — which showed her to be more limited than the ALJ found —

4   the ALJ cited evidence in record that Plaintiff self-reported the ability to do dishes, clean the

5   house, do laundry, sweep, and vacuum on a daily basis.  *See, e.g.*, AR at 238.  She also

6   reported the ability to complete similar tasks during a consultative examination.  *See* AR at 358

7   (describing the ability to prepare food on her own, do laundry, complete house chores, grocery

8   shop, and handle "all the financial matters in a responsible manner").  Though her testimony at

9   the administrative hearing indicated more severe symptoms, the ALJ was not unreasonable in

10  relying on other evidence of Plaintiff's self-reported activities and in construing that evidence

11  to be inconsistent with Dr. Alvarez's opinion.  *See Tackett*, 180 F.3d at 1098 (holding that

12  when evidence reasonably supports either confirming or reversing the ALJ's decision, the

13  court should uphold the ALJ's decision).

14  B.      Plaintiff has Not Established that the ALJ Erred in Assessing Her RFC.

15       Plaintiff argues that the ALJ's RFC assessment does not account for all of her

16  limitations, and the Court will address first Plaintiff's allegedly omitted physical limitations

17  before turning to consider whether the ALJ failed to account for all of Plaintiff's mental

18  limitations.

19           1.      *Headaches and Carpal Tunnel Syndrome*[7]

20       Plaintiff alleges that the ALJ erred in first finding that her migraine headaches and

21  carpal tunnel syndrome were not severe impairments at step two, but argues in the alternative

22  _____

23           [7] The Commissioner does not address Plaintiff's argument regarding headaches and
    carpal tunnel syndrome in her Response.  Because Plaintiff has failed to identify a proper error
24  as to those alleged impairments, however, the Court will not construe the Commissioner's
    failure to respond as a concession.

REPORT AND RECOMMENDATION - 11

1  that even if they were not severe, they should have been accounted for in the RFC assessment.

2  Dkt. 18 at 13-14.

3        As to migraines, Plaintiff has not identified evidence showing that the ALJ's findings at

4  either step two or in the RFC assessment are erroneous.  Plaintiff identifies passing references

5  to headaches and migraine medications in Dr. Dimbil's treatment notes, but none of those

6  notes establish any specific functional limitations caused by Plaintiff's headaches.  *See* AR at

7  297, 303, 305-06, 398, 400.  Dr. Dimbil's functional opinion did not indicate any limitations

8  associated with headaches.  *See* AR at 475-76.  In the absence of evidence establishing

9  limitations, Plaintiff cannot establish that the ALJ erred in failing to find the migraines to be a

10  severe impairment, or in failing to include any particular related limitation in the RFC

11  assessment.

12        As to carpal tunnel syndrome, the ALJ noted that the record contained no evidence

13  beyond Plaintiff's self-report that she ever had carpal tunnel surgery.  AR at 18.  The ALJ also

14  noted that the examinations of record failed to establish any "abnormalities that could be

15  associated with carpal tunnel syndrome."  AR at 18 (citing AR at 294-306, 345-54, 438-64).

16  Plaintiff points to references in the record regarding carpal tunnel syndrome, but again fails to

17  identify any evidence establishing limitations caused by carpal tunnel syndrome.  Accordingly,

18  Plaintiff cannot establish that the ALJ erred in failing to find carpal tunnel to be a severe

19  impairment, or in failing to account for any particular related limitation in the RFC assessment.

20        2.      *Mental Impairments*

21        Plaintiff claims the ALJ erred in failing to include any mental limitation in her RFC

22  assessment, despite her step-two finding that Plaintiff's depression was severe.  Plaintiff

23  acknowledges that consultative examiner Bluma Ekshtut, Psy.D., diagnosed her with

24  depression and yet "concluded that she had essentially no work limitations even though she

1   was often angry, hopeless, and helpless." Dkt. 18 at 16.  Though Plaintiff obviously disagrees

2   with Dr. Ekshtut's conclusions, she does not explain why the ALJ was not entitled to rely on

3   Dr. Ekshtut's opinion in order to conclude that Plaintiff's depression did not cause mental

4   limitations.

5        Plaintiff also directs the Court's attention to the opinion of State agency consultant

6   Renee Eisenhauer, Ph.D., who found Plaintiff to have a moderate limitation as to sustained

7   concentration and persistence.  AR at 384-87.  Dr. Eisenhauer explained in the narrative

8   portion of the form that Plaintiff "is able to complete tasks, but appears to struggle with

9   persistence at times in doing so."  AR at 386.  Plaintiff does not acknowledge that when Dr.

10  Eisenhauer's opinion was reviewed by Gary Nelson, Ph.D., Dr. Nelson found that Plaintiff "is

11  capable of completing complex tasks on a sustained basis", and he affirmed Dr. Eisenhauer's

12  earlier opinion.  AR at 411.  The ALJ found that Plaintiff retained sufficient concentration

13  capability to be able to "maintain persistence and pace in 2-hour increments with usual and

14  customary breaks during an 8-hour workday", and that she retains sufficient persistence and

15  pace to meet average production standards.  AR at 20.  The ALJ also included that limitation in

16  her hypothetical, and the VE testified that a person with that concentration limitation could still

17  perform a number of occupations.  *See* AR at 92.  Because Plaintiff has not shown that the

18  ALJ's assessment of Plaintiff's limitations is inconsistent with the opinions of State agency

19  consultants, those opinions do not provide a basis to argue that the ALJ erred in assessing

20  Plaintiff's residual mental capacity.  *See Turner v. Comm'r of Social Sec. Admin*, 613 F.3d

21  1217, 1223 (9th Cir 2010) (holding that ALJ need not provide reason for rejecting physician's

22  opinions where ALJ incorporated opinions into RFC assessment; ALJ incorporated opinions

23  by assessing RFC limitations "entirely consistent" with limitations assessed by physician).

24       Furthermore, to the degree that Plaintiff's self-report indicates more severe mental

REPORT AND RECOMMENDATION - 13

1    limitations, the ALJ provided other reasons to discount those allegations.  First, the ALJ noted

2    that Plaintiff did not seek mental-health treatment commensurate with her complaints, and she

3    refused to take medications and canceled or missed multiple counseling appointments.  AR at

4    22.  Though Plaintiff contends that under *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996), the

5    ALJ should not have construed her treatment and medication history against her, *Nguyen* is

6    distinguishable.  In *Nguyen*, the ALJ discounted evidence of depression because a claimant

7    failed to seek treatment for any mental disorder "until late in the day," and the Ninth Circuit

8    found it to be unreasonable "to chastise one with a mental impairment for the exercise of poor

9    judgment in seeking rehabilitation."  100 F.3d at 1465.  Plaintiff here, on the other hand,

10   sought treatment but refused recommended medications and canceled a number of counseling

11   appointments, which reasonably suggests that that her symptoms were not as severe as alleged.

12   Because the ALJ's conclusion here was reasonable, the Court should not disturb it.  *See*

13   *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the

14   evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that

15   must be upheld.").

16   C.      The ALJ Did Not Err in Discounting Plaintiff's Credibility.

17           The ALJ provided a number of reasons to discount Plaintiff's credibility: inconsistent

18   statements made to providers, medical evidence inconsistent with Plaintiff's allegations, lack

19   of corroboration in the medical record for Plaintiff's allegations, Plaintiff's less-than-full

20   compliance with medical treatment, the fact that Plaintiff's most recent job ended for reasons

21   other than her alleged impairments, and inconsistent daily activities.  AR at 21-23.

22           In assessing credibility, an ALJ must first determine whether a claimant presents

23   "objective medical evidence of an underlying impairment 'which could reasonably be expected

24   to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036

REPORT AND RECOMMENDATION - 14

(9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Given

presentation of such evidence, and absent evidence of malingering, an ALJ must provide clear

and convincing reasons to reject a claimant's testimony.  *Id.   See also Vertigan v. Halter*, 260

F.3d 1044, 1049 (9th Cir. 2001).

According to Plaintiff, many of the ALJ's reasons for discounting Plaintiff's testimony

were not clear and convincing.  Specifically, Plaintiff argues that lack of corroboration in the

medical record is not a valid reason to reject a claimant's testimony as to subjective testimony.

Plaintiff next asserts that her demotion at work triggered her depression, which led to her being

fired, so the ALJ incorrectly presumed that she stopped working for reasons unrelated to her

impairments.  Lastly, as to daily activities, Plaintiff argues that the ALJ erred in finding that

her activities would be transferable to a work setting.  Though the Court finds that some of the

ALJ's reasons are invalid, the remaining reasons are supported by substantial evidence and the

overall credibility determination remains valid, for the reasons explained in the following

sections. *See Carmickle*, 533 F.3d at 1162 (holding that the inclusion of an invalid reason to

discount a claimant's credibility is harmless so long as the other reasons provided are

supported by substantial evidence and the error does not invalidate the ALJ's ultimate

conclusion on credibility).

1.    *Lack of Corroboration in the Medical Record*

The ALJ provided a number of examples in the record where Plaintiff's medical

records failed to corroborate her allegations of severe symptoms.  Plaintiff reported bilateral

knee pain in April 2008 after a fall, but "providers recorded no notable findings."  AR at 21

(citing AR at 303-04).  In May 2008, she reported severe pain, and the pain was severe enough

to prevent the examiner from fully evaluating her knees; the ALJ noted, however, that the

examiner indicated that she "seemed to ambulate okay and showed no apparent ligament

1   laxity." AR at 21 (citing AR at 301-02).  Though Plaintiff complained of severe knee pain,

2   July 2009 knee x-rays revealed only "minimal degenerative changes."  AR at 21 (referencing

3   AR at 349-51).  The ALJ also noted that though Plaintiff complained of asthma flare-ups in

4   2010, pulmonary function tests "revealed only mild airway obstruction" and her chest x-rays

5   "were largely normal."  AR at 21 (citing AR at 438-64).  The ALJ further cited evidence that

6   though Plaintiff complained of feeling depressed, angry, and hopeless, her July 2009 mental-

7   status examination findings were "generally normal."  AR at 22 (citing AR at 356-57).

8            The Court agrees with Plaintiff that the evidence cited by the ALJ as evidence of lack

9   of corroboration does not amount to a valid reason to discount Plaintiff's credibility, because

10  the evidence cited does not necessarily contradict Plaintiff's testimony.  The lack of evidence

11  of degenerative knee change does not establish that Plaintiff's allegations of knee pain were

12  not credible, and the normal findings upon a chest x-ray does not establish that Plaintiff's

13  reported chest pain was not credible.  *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir.

14  2001).  Furthermore, the mental-status examination findings cited by the ALJ have no bearing

15  on Plaintiff's allegations of depression, anger, and hopelessness; it is unclear why Plaintiff's

16  ability to add, spell "world," or follow a three-step command undermines her testimony of

17  mental symptoms.

18           The invalidity of this reason is not fatal to the Commissioner's defense, however,

19  because the ALJ provided other valid reasons to discount Plaintiff's testimony, as discussed in

20  the next sections.

21           2.      *Inconsistent Reporting of Symptoms*

22           The ALJ cited to a number of records demonstrating that the Plaintiff inconsistently

23

24

reported symptoms.[8]  Specifically, the ALJ noted that Plaintiff did not report asthma symptoms in her July 2009 consultative examination, and that the examiner did not indicate that Plaintiff had any respiratory abnormalities.  AR at 21 (citing AR at 348).  The ALJ also pointed to Plaintiff's failure to report to her providers that she experienced falls or loss of balance three or four times per day as she testified at the hearing, or to report injuries caused by those falls of that frequency.  AR at 21 (referencing AR at 82).

Plaintiff does not establish that the ALJ's inferences here were erroneous.  Because the ALJ reasonably interpreted this evidence as inconsistent with Plaintiff's allegations, this reason is a valid basis on which to discount Plaintiff's credibility.  *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that inconsistencies within a claimant's testimony is a proper factor supporting an ALJ's adverse credibility determination).

3.    *Plaintiff's Work History*

The ALJ cited evidence that she construed to mean that Plaintiff did not stop working due to her impairments.  AR at 23 (citing AR at 322, 356).  Specifically, Plaintiff reported that she was fired after first being demoted; and that being demoted caused Plaintiff to experience stress and depression, which rendered her unable to perform her job duties and led to her termination.  AR at 322, 356.  According to Plaintiff, the ALJ should have construed the evidence to indicate that because Plaintiff's depression after being demoted triggered her eventual termination, Plaintiff's impairments (*i.e.*, depression) did cause her to stop working.

---

[8] One of the ALJ's references in this category appears to be in error: the ALJ stated that Plaintiff denied "any significant health problems" during a May 2009 examination.  AR at 21.  The ALJ did not cite to the record to support that statement, and the Commissioner's briefing summarizes that finding and directs the Court's attention to AR at 341 (Dkt. 19 at 5), which is a May 2009 treatment note — but it contains no indication that Plaintiff denied significant health problems.  The treatment note instead indicates that Plaintiff reported experiencing "[m]edical issues ongoing with her obesity and knees."  AR at 341.  Without a valid citation to evidence supporting the ALJ's finding that Plaintiff reported no significant health problems in May 2009, the Court presumes the ALJ's finding as to that purported evidence was erroneous.

1    Dkt. 18 at 20.

2         Though Plaintiff's alternative interpretation of the evidence may be reasonable, the

3    ALJ's interpretation is not unreasonable and should therefore be affirmed.   *See Batson v.*

4    *Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ reasonably

5    found that because the first event that led to Plaintiff's termination — Plaintiff's demotion —

6    was not caused by Plaintiff's impairments, but by conflicts with her program supervisor.

7    Plaintiff's hearing testimony regarding the events that led to her termination focused entirely

8    on mistrust between and disagreements with the supervisor, rather than on circumstances

9    caused by her impairments. *See, e.g.*, AR at 74-75.  Because the ALJ reasonably interpreted

10   the evidence to suggest that Plaintiff stopped working for reasons other than her impairments,

11   that work history is a valid reason to discount Plaintiff's credibility.  *See Bruton v. Massanari*,

12   268 F.3d 824, 828 (9th Cir. 2001) (finding that an ALJ properly discounted a claimant's

13   credibility in light of, *inter alia*, evidence showing that the claimant's job ended "because he

14   was laid off, rather than because he was injured").

15        4.    *Daily Activities*

16        Plaintiff alleges that the ALJ erred by citing her daily activities as a basis for

17   discounting her credibility, even though the daily activities cited do not establish that Plaintiff

18   retained capabilities transferable to a work setting. Dkt. 18 at 20.  Plaintiff overlooks the

19   distinction between citing daily activities as evidence of work capabilities, and citing daily

20   activities as inconsistent with other testimony. *See Molina*, 674 F.3d at 1112-13.  Here, the

21   ALJ cited evidence that Plaintiff both (1) denied significant difficulty with washing dishes or

22   performing other daily activities and maintained the ability to babysit young children and

23   travel, and yet (2) testified at the administrative hearing that she cannot wash dishes or perform

24   other daily activities.  AR at 22 (comparing AR at 54-55 with AR at 238, 358).  The ALJ

REPORT AND RECOMMENDATION - 18

1   reasonably construed those allegations as inconsistent, and properly discounted Plaintiff's

2   credibility on that basis. *See Molina*, 674 F.3d at 1113 ("Even where [a claimant's] activities

3   suggest some difficulty functioning, they may be grounds for discrediting the claimant to the

4   extent that they contradict claims of a totally debilitating impairment.").

5   D.      The ALJ Erred at Step Five.

6          Plaintiff alleges that the ALJ erred in two ways with respect to her step-five findings.

7   Dkt. 18 at 21-23.  First, Plaintiff contends that the ALJ denied Plaintiff's right to cross-

8   examine the vocational expert, when the ALJ refused to let Plaintiff's counsel ask a particular

9   hypothetical question.  Second, Plaintiff asserts that the ALJ's RFC assessment does not match

10  the hypothetical question posed to the VE, rendering the step-five findings unsupported.  The

11  Court will address each alleged error in turn.

12         1.      *Plaintiff was Not Denied the Right to Question the VE.*

13         Both parties agree that a claimant is entitled to question a VE, but Plaintiff's argument

14  overlooks the limits placed on that questioning process.  Questions posed to the VE must be

15  "material to the issues."  Hearing, Appeals, and Litigation Law Manual ("HALLEX") I-2-5-30,

16  1994 WL 637367, at *1 (Sep. 28, 2005).  The ALJ retains the right to strike questions that

17  would produce "repetitive and cumulative" testimony, or questions "designed to intimidate,

18  harass or embarrass the witness."  HALLEX I-2-6-60, 1993 WL 751900, at *1 (Sep. 2, 2005).

19  The claimant's right to question a VE extends to inquiries "into the matters at issue."  *Id.*

20         In this case, the ALJ refused to allow Plaintiff's attorney to ask the VE a hypothetical

21  question involving an individual who is off-task 20% of the workday, citing the lack of

22  foundation for that question:

23              ALJ: . . . [B]ut how did you arrive at a 20 percent time?  How do you
                translate pain into a 20 percent time of the day?

24

REPORT AND RECOMMENDATION - 19

ATTY:  Well, that's based on that moderate limitation that she has from her, the mental residual functional capacity form.

ALJ:  But "moderate" is not defined in that form.  It's not defined by the [Dictionary of Occupational Titles].

ATTY:  That's true so it's less than, you know[,] it's not as much as a [marked] or, you know, it's not [] insignificant. . . .

Well, so we can try different percentages and see what –

ALJ:  Well, you can but you have to support it[,] otherwise we're reaching into thin air for any percentage, you see?

ATTY:  Right.

ALJ:  So how do we arrive?  "Moderate" is not defined.  "Occasional" is defined.

ATTY:  Well, we could look at some of the other, right and "occasional" is defined as or let's use the "occasional" then.

ALJ:  But why are you using "occasional"?  What is that supported by?

ATTY:  The same documents.  The same things that I mentioned.

ALJ:  But [the State agency consultant] did not use "occasional".  Are you talking about the [Psychiatric Review Technique form ("PRTF")] for the mental?

ATTY:  Right.

ALJ:  . . . [T]hat's not in the form because "occasional" is mostly used with physical limitations.

ATTY:  Correct.

ALJ:  So the PRTF that you're referring to doesn't have that.  It's in terms of "moderate" and "marked" and so forth.

ATTY:  Right which, you know, we'd have to just look at some other reference to it.  Well . . . is that question being denied or what's the status on it?

ALJ:  Well, it is unless you can define "moderate" and then tell me where you're getting that from because otherwise it's, you know, you –

ATTY:  Right, it's less than "marked" and it's more than "never", okay,

1    so –

2           ALJ:  Okay, it's . . . more than "mild" but less than "marked" and less
     than "extreme".

3
4           ATTY:  Correct, right.

5           ALJ:  So where does that leave us.

6           ATTY:  Well, let's ask the vocational expert.

7           ALJ:  Well, absolutely not because that's the problem.  You have to, in
     order to ask an expert witness a question it has to be in terms of a hypothetical
     and it has to be, for a vocational expert in vocationally relevant terms and it has
     to be supported.  It's like asking her[:] the claimant has a serious illness.  Do
8    you think she can work[?]  Well, what's serious to you is different than what's
     serious to me and so it's not a legitimate evidentiary question.

9

10   AR at 105-08 (inserting quotation marks to indicate the terms of art used).  After this portion of

11   the hearing, Plaintiff's attorney attempted to rephrase a hypothetical question for the VE, but

12   did not return to the 20% off-task limitation.  AR at 108-10.

13          The excerpted hearing transcript shows that the ALJ prevented Plaintiff's counsel from

14   asking a question that was not supported by the evidence, and thus the ALJ's restriction was

15   proper.  Plantiff's counsel's question was based on a "moderate" concentration limitation

16   identified in the PRTF, but Plaintiff's counsel could not provide any basis for quantifying that

17   "moderate" limitation as 20% off-task.  Indeed, Plaintiff's briefing fails to identify any support

18   for the bald assertion that "'Moderate' is frequently conservatively defined as a 20% reduction

19   by [ALJs] and claimant's representatives alike."  Dkt. 18 at 22.  By preventing Plaintiff's

20   counsel from asking a question that was not supported by the record, the ALJ properly limited

21   questioning to material issues.  *See* HALLEX 1-2-5-30, 1-2-6-60.  Plaintiff has not established

22   error here.

23

24

REPORT AND RECOMMENDATION - 21

2.     *The Written RFC Assessment is Not Necessarily Consistent with the VE Hypothetical.*

The ALJ's written RFC assessment includes a sit/stand option: "[Plaintiff] should be allowed to sit and stand at will."  AR at 20.  The ALJ's hypothetical questions posed to the VE did not expressly include an at-will sit/stand option, but merely mentioned the possibility that the individual's primarily sedentary job would include the possibility of standing and walking for short periods throughout the day.  AR at 90-96.  At one point during the VE's testimony, after the ALJ had already posed her hypothetical (which lacked any reference to sitting/standing at will), the ALJ asked whether the VE could identify any additional jobs that would allow "for that type of sitting and standing pretty much at will and uses a combination of both but mostly of course sitting"; the VE's answer suggests that she understood the ALJ to mean that the hypothetical individual could do some jobs classified as light if they could nonetheless can be performed with a restriction to standing/walking two hours a day.  AR at 93-94.  The VE identified a number of unskilled jobs that the hypothetical individual could perform, and the ALJ relied on that testimony at step five.  AR at 25-26.

According to Plaintiff, the ALJ's failure to include an express "sit/stand at will" in the hypothetical undercuts the value of the VE's testimony on which the step-five findings were based, because the ALJ's hypothetical did not include all of the Plaintiff's limitations.  *Lewis v. Apfel*, 236 F.3d 503, 517-18 (9th Cir. 2001) ("Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.'  If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value." (quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987))).

The Commissioner does not respond to this argument in her briefing, which the Court construes as a concession that Plaintiff's argument has merit.  The Court will not manufacture

1    a defense on the Commissioner's behalf where Plaintiff has identified an at least plausible

2    error, and thus will remand this matter to allow the ALJ to reconsider her RFC assessment and,

3    if necessary, obtain additional testimony from the VE to support her step-five findings.

VIII.   CONCLUSION

4

5            For the foregoing reasons, the Court recommends that this case be REVERSED and

6    REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

7    instructions.  A proposed order accompanies this Report and Recommendation.

8            DATED this 7th day of June, 2013.

9

10                                             *James P. Donohue*

11                                             JAMES P. DONOHUE
                                               United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 23